UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

RICHARD L. CHALAL, }
  }
  Plaintiff, }
  }
v. } CASE NO. CV 98-B-2687-NW
  }
COLUMBIA NORTHWEST }
MEDICAL CENTER, INC., a }
corporation, }
  }
  Defendant. }

**MEMORANDUM OPINION**

On February 21, 2001, the Eleventh Circuit Court of Appeals affirmed the summary judgment entered in favor of defendant at the district court level. The court also affirmed the award to defendant of reasonable fees and costs. Defendant then petitioned the Eleventh Circuit for an award of attorneys' fees expended on the appeal. On July 5, 2001, the Eleventh Circuit granted Appellee's Petition for Attorneys' Fees on Appeal and remanded the case to this court to determine the amount to be awarded.

On July 9, 2001, defendant filed an Affidavit supporting its request for attorneys' fees in the amount of $19,990.77. On July 18, 2001, the court entered an Order allowing plaintiff until August 17, 2001, to file his opposition to the reasonableness of defendant's request. On July 23, 2001, Dr. Chalal filed a Motion to Stay the court's July 18, 2001, Order due to the fact that he had filed a Petition for Writ of Certiorari with the United States Supreme Court. The Motion to Stay was granted. On October 1, 2001, the United States Supreme Court denied Dr. Chalal's Petition.

On October 4, 2001, defendant filed the Supplemental Affidavit of Laurence J. McDuff seeking an additional $7,001.26 in attorneys' fees and expenses relating to defendant's opposition to Dr. Chalal's Petition for Writ of Certiorari. On December 17, 2001, defendant filed the Affidavit of John T. Mooresmith, a partner with a well-known and highly regarded Birmingham law firm. Mr. Mooresmith states in his Affidavit that he reviewed the Affidavit and Supplemental Affidavit of Laurence J. McDuff with regard to the total amount of legal fees and expenses claimed by Northwest Medical Center, Inc. in opposing Dr. Chalal's appeal to the Eleventh Circuit, his application for rehearing, and finally Dr. Chalal's Petition for Writ of Certiorari to the United States Supreme Court. Mr. Mooresmith opines that based on his judgment and experience as a lawyer practicing in the health care area, fees and expenses of $26,992.03 as set forth in Mr. McDuff's two Affidavits are reasonable.

On January 8, 2002, plaintiff's counsel filed an Affidavit challenging the reasonableness of the fees sought by defendant's counsel. On the same date, plaintiff filed a Motion to Strike Affidavit of John T. Mooresmith on the ground that his Affidavit did not address "fees generally charged in the geographic area where the case was filed, to wit; Russellville, Alabama." This argument is without merit as defendant was represented by a Birmingham law firm, not a lawyer from Russellville. Therefore, plaintiff's Motion to Strike Affidavit of John T. Mooresmith is due to be denied.

Prior to ruling on the amount due defendant's counsel, the court would emphasize a portion of the court's April 3, 2000, Opinion granting defendant's Motion for attorneys' fees:

> The facts of this case are set forth in the court's memorandum opinion granting summary judgment, and need not be repeated here. To summarize, on December 20, 1996, the Hospital terminated Dr. Chalal's medical staff privileges.

2

The Hospital's decision was based upon the adverse recommendations of two physician peer review committees of the Hospital's Medical Staff, both of which recommended denying privileges in light of a number of clinical incidents in which Dr. Chalal's patients suffered poor outcomes. Dr. Chalal noticed an appeal of the decision in accordance with the Medical Staff Bylaws, and an Appellate Review committee made up of three additional physicians affirmed the Hospital's decision.

On October 2, 1998, Dr. Chalal filed a six-count complaint against the Hospital alleging various federal and state claims, all based on the Hospital's conduct in terminating his medical staff privileges as outlined above. On May 6, 1999, the Hospital filed a Motion for Summary Judgment, based on the Health Care Quality Improvement Act's ("HCQIA") presumption of immunity for "professional review actions" which meet certain due process and fairness requirements. 42 U.S.C. §§ 11101 through 11152. The Hospital subsequently filed an amended summary judgment motion on July19, 1999, to address the other miscellaneous counts in the plaintiff's complaint. As stated in the separate Memorandum Opinion, Dr. Chalal offered no evidence to rebut the Hospital's presumption of immunity under HCQIA, and the court concluded his complaint was merely an improper attempt to have this court substitute its judgment for that of Dr. Chalal's medical colleagues.

. . .

Congress passed HCQIA in 1986 in order to encourage physician peer review proceedings, which previously had been thwarted by the threat of litigation from disciplined doctors. *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318, 1321 (11th Cir. 1994). The statute expressly states that "[t]he threat of private money damage liability under [state and] Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review." 42 U.S.C. § 11101(4). Accordingly, HCQIA provides limited immunity if a "professional review action" meets certain due process and fairness requirements. 42 U.S.C. § 11111(a)(1).

To further this statutory purpose, Congress included an attorneys' fee provision in HCQIA which provides as follows:

> In any suit brought against a defendant, to the extent that a
> defendant has meet the standards [for HCQIA immunity] and the

3

>defendant substantially prevails, the court shall, at the conclusion
>of the action, award to a substantially prevailing party defending
>against any such claim the costs of the suit attributable to such
>claim, including reasonable attorney's fee, if the claim, or the
>claimant's conduct during the litigation of the claim, was frivolous,
>unreasonable, without foundation, or in bad faith.

42 U.S.C. § 11113.

In *Smith v. Ricks*, 31 F.3d 1478 (9th Cir. 1994), the Ninth Circuit Court of Appeals explained that "[t]he policy behind this provision is clear: Congress wanted to encourage professional peer review by limiting the threat of unreasonable litigation expenses." *Smith v. Ricks*, 31 F.3d 1487. In the *Smith v. Ricks* case, the court affirmed an award of $281,344 in attorneys' fees and $21,777 in expenses under HCQIA's fee-shifting provision, holding as follows: "The district court did not abuse its discretion in characterizing Dr. Smith's claim as without foundation or frivolous. Dr. Smith never produced any evidence suggesting an antitrust violation. At best, Dr. Smith pointed out some procedural defects in the hearing process." *Smith v. Ricks*, 31 F.3d at 1487.

In the present case, Dr. Chalal has similarly produced no evidence to support his various claims. It is readily apparent from arguments filed in response to the Hospital's motions for summary judgment that Dr. Chalal never had any substantive basis upon which to challenge the medical staff's termination of his hospital privileges. To the contrary, it appears to this court that Dr. Chalal filed this litigation simply as an economic threat, hoping the Hospital's medical staff would reconsider its decision instead of undertaking the considerable legal expense necessary to obtain a favorable judgment. This is precisely the type of conduct that HCQIA's fee-shifting provision was designed to discourage.

Not only was his original suit without any foundation, Dr. Chalal subsequently refused to narrow his claims after the court urged his counsel to do so, creating the necessity for the Hospital's counsel to research and brief areas of law (such as antitrust, interference with contractual relations, and outrage) which were patently without evidentiary support. Because Dr. Chalal failed to offer any evidence which might even arguably rebut the Hospital's presumption of immunity under HCQIA, the court concludes that Dr. Chalal's claims were "frivolous, unreasonable, without foundation, [and] in bad faith," *see* 42 U.S.C. § 11113, and accordingly the Hospital's Motion for Attorneys' Fees should be granted.

In affirming the court's grant of summary judgment, the Eleventh Circuit noted:

> Our conclusion in *Bryan* appears equally compelling in this case:
>
> This is precisely the type of case that Congress targeted when passing [the Act]: [T]he intent of [the Act] was not to disturb, but to reinforce, the preexisting reluctance of courts to substitute their judgment on the merits for that of health care professionals and of the governing bodies of hospitals in an area within their expertise.
>
> *Bryan*, 33 F.3d at 1337 (citations and internal quotations omitted.)

*Chalal v. Columbia Northwest Med. Ctr., Inc.,* No. 00-12114, slip op. at 4 (11th Cir. Feb. 21, 2001).

Although Dr. Chalal certainly had the right to petition the Supreme Court for a review of the Eleventh Circuit's decision, the defendant is now entitled to an award of fees for the time spent opposing Dr. Chalal's Petition for Writ of Certiorari.

In her Affidavit filed January 8, 2002, plaintiff's counsel points out a number of areas where she asserts that the attorneys' fees requested by defendant are excessive. In addressing plaintiff's arguments regarding defendant's fee request, the court is faced with the same problem it faced in addressing the Motion for Attorneys' Fees filed by defendant in connection with having prevailed on summary judgment. In the court's April 3, 2000, Opinion, the court noted that "[u]nfortunately, the summary of hours attached to Ms. Davis's Affidavit does not mirror the defendant's invoice attached to Mr. Rowe's Affidavit submitted in support of defendant's Motion for Attorneys' Fees." The court is again faced with this problem. For instance, Ms. Davis argues that defendant charged the following in regard to recording and preparing the Certificate of Judgment:

5

| DATE | TIME | | AMOUNT |
|---|---|---|---|
| 04/04/00 | 2.4 | Work on obtaining Certificate of Judgment | $360.00 |
| 04/05/00 | 2.10 | Draft revised Certificate of Judgment | $315.00 |
| 04/20/00 | .40 | and mail Re: Collection of Judgment | $ 88.00 |
| 04/18/00 | ___ | Milage to record Judgment | $ 78.65 |
| | 4.9 hrs. | | $841.65 |

The summary attached to Mr. McDuff's Affidavit filed July 9, 2001, reflects the following description for time expended on the dates listed above:

| DATE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 04/04/00 | Receive and Review Judge Blackburn's opinions; work on obtaining and recording Certificate of Judgment; telephone conference with Christine Stewart regarding same. | 2.40 | $360.00 |
| 04/05/00 | Draft revised Certificate of Judgment; Obtain same for district court; record same with probate court. | 2.10 | $315.00 |
| 04/18/00 | Client expense DL - Milage to Russellville (242 MI. - 04/05/00) | | $ 78.65 |
| 04/20/00 | E-mail re: collection efforts versus Dr. Chalal; discuss with JAJ | .40 | $88.00 |

Thus, the description of the work performed by defendant includes additional work not noted by plaintiff's counsel. Other objections by plaintiff suffer from the same problem. While there may be some charges which are slightly excessive, the court is of the opinion that a reduction in the fees and expenses sought is not warranted.

6

Following a careful review of each entry in defendant's fee request, the Affidavits submitted by defendant, and the Affidavit submitted by Dr. Chalal's counsel, the court is of the opinion that defendant is entitled to fees and expenses in the total amount of $26,992.03. An order in accordance with this Opinion will be entered contemporaneously herewith.

**DONE** this ___7th___ day of February, 2002.

*[signature]*
**SHARON LOVELACE BLACKBURN**
United States District Judge